1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **EASTERN DISTRICT OF CALIFORNIA**

10

| | | |
|---|---|---|
| 11 PAUL MARK FREEMAN, | ) | Case No.: 1:21-cv-00195-JLT (HC) |
| 12             Petitioner, | )<br>) | ORDER DENYING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| 13        v. | )<br>) | |
| 14 XAVIER BECERRA, Attorney General, | ) | ORDER DIRECTING CLERK OF COURT TO |
| | ) | ENTER JUDGMENT AND CLOSE CASE |
| 15            Respondent. | )<br>) | |
| 16 _____ | )<br>) | ORDER DECLINING ISSUANCE OF |
| | | CERTIFICATE OF APPEALABILITY |

17          Petitioner was convicted by jury trial for DUI, with a prior, and is serving a sentence of eight

18 years and four months. He filed the instant habeas petition challenging the conviction and sentence. As

19 discussed below, the Court finds the claims to be without merit and DENIES the petition.

20 **I.      PROCEDURAL HISTORY**

21          Petitioner is in custody pursuant to a Stanislaus County Superior Court judgment imposing a

22 term of eight years and four months after jury conviction for DUI, with a prior, *inter alia*. (Doc. 9 at

23 2.) Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"), and

24 held that "[t]he abstract of judgment must be corrected as to case No. 1491573, to reflect defendant's

25 conviction in count 2 of driving with a blood-alcohol level of 0.08 or greater in violation of section

26 23152, subdivision (b), and that the consecutive sentence of eight months was stayed pursuant [to]

27

28

1

1  Penal Code section 654." (LD[1] 7-12); <u>People v. Freeman</u>, No. F077543, 2020 Cal. App. Unpub.

2  LEXIS 6501, at *48 (Oct. 6, 2020). The Fifth DCA affirmed the judgment in all other respects. <u>Id</u>.

3  Subsequently, the Fifth DCA entered an order modifying the opinion and denying rehearing. (LD 7-

4  13); <u>People v. Freeman</u>, No. F077543, 2020 Cal. App. Unpub. LEXIS 7324 (Nov. 3, 2020). On

5  December 30, 2020, the California Supreme Court denied discretionary review. (LD 7-14); <u>People v.</u>

6  <u>Freeman</u>, No. S265559, 2020 Cal. LEXIS 8866 (Dec. 30, 2020).

7        On February 17, 2021, Petitioner filed the instant habeas petition in this Court. (Doc. 1.)

8  Respondent filed an answer on April 19, 2021. (Doc. 9.) On June 16, 2021, Petitioner filed a traverse.

9  (Doc. 12.)

10  **II.      FACTUAL BACKGROUND**

11        The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[2]:

12  **THE 2012 CONVICTION AND PROBATION**

13  **(Case No. 1431988)**

14  On January 14, 2011, defendant was driving with his fiancée after leaving a bar.
   Defendant lost control of the car, swerved, veered to the right, spun out, and hit a light
15  pole. Defendant and his fiancée were ejected. She suffered "significant injuries"
   including fractures in two vertebrae, a fractured pelvis, and a "likely brain injury."
16  Defendant's blood-alcohol content was determined to be 0.22 percent. Defendant
   admitted drinking Red Bull and vodka.
17
   On May 1, 2012, a complaint was filed that charged defendant with count 1, felony DUI
18  causing injury (§ 23153, subd. (a)), and count 2, felony driving with a blood-alcohol
   content of 0.08 percent or higher causing injury (§ 23153, subd. (b)), with special
19  allegations that his blood-alcohol level was 0.15 percent or higher (§ 23578), and the
   victim suffered great bodily injury (Pen. Code, § 12022.7, subd. (a)).
20
   On May 18, 2012, defendant pleaded no contest to count 1, felony DUI causing injury
21  (§ 23153, subd. (a)) and admitted the special allegations that his blood-alcohol level was
   0.15 percent or higher and the victim suffered great bodily injury. The court dismissed
22  the other allegations, suspended sentence, and placed him on felony probation for five
   years subject to certain terms and conditions, including serving 180 days in jail, obeying
23  all laws, and not consuming alcohol.

24  **THE COLLISION AT THE TRAFFIC LIGHT**

25  **(Case No. 1491573)**

26  On the night of August 22, 2015, Ms. Gutierrez was driving on Burney Street in Modesto

27

28  _____
   [1] "LD" refers to the documents lodged by Respondent with the answer.
   [2] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1).
   Therefore, the Court will rely on the Fifth DCA's summary of the facts. <u>Moses v. Payne</u>, 555 F.3d 742, 746 (9th Cir. 2009).

2

in her Chrysler Town and Country van. She stopped at a red light at the corner of G Street. There was a car in front of her that also stopped at the intersection.

At the moment the traffic light changed to green, the car in front of her drove forward. Before Ms. Gutierrez could move forward, her vehicle was suddenly hit from behind by another vehicle. The impact forced her knees to hit the steering column. She felt immediate pain in her arms as she was pushed forward.

Ms. Gutierrez turned onto G Street and parked her vehicle. Ms. Gutierrez testified it was dark, but the area was illuminated by streetlights. The driver of the second car also turned onto G. Street, but the driver did not stop, roll down his window, or try to make contact with Ms. Gutierrez. Instead, the vehicle drove around the driver's side of Ms. Gutierrez's car and left the area. As the vehicle drove past her, Ms. Gutierrez determined it was a dark-colored Chrysler 300 with "nice shiny rims." She recognized the model because she had been interested in buying that type of car.

As the Chrysler 300 drove by her, Ms. Gutierrez was also able to see the driver "for a quick second" because he looked at her. She described a man with "darker hair" and "not a dark complexion but not a light complexion either." She saw the driver's face "very quickly" until the driver placed his hand over his face and obstructed her view.

As the Chrysler 300 drove away, Ms. Gutierrez tried to signal the driver by honking her horn. He did not stop and kept driving, and he was going "too fast, like swerving away." He drove toward the La Loma area and never returned to the scene.

**The initial investigation**

At 10:50 p.m., Modesto Police Officer David Chamberlain received a dispatch to respond to a hit and run collision at the intersection of Burney and G Street in the La Loma area. At 11:09 p.m., Chamberlain arrived at the scene and contacted Ms. Gutierrez.

Officer Chamberlain testified Ms. Gutierrez reported a dark car with chrome rims hit her vehicle, and a dark-skinned male with short hair drove it. Chamberlain determined her vehicle had minor damage from the rear-end collision. Chamberlain reported the incident as a noninjury collision because Ms. Gutierrez did not appear injured or ask for an ambulance.

Ms. Gutierrez was never asked to identify anyone as the driver and testified she would not be able to do so.

**Ms. Gutierrez's injuries**

Ms. Gutierrez testified she suffered bruises on her chest from the seat belt. She did not go to the hospital that night. A few days after the crash, Ms. Gutierrez felt bursitis in her right hip from being forced against the seat belt. Her legs started to hurt and swell, and she had trouble walking. She went to her physician and received cortisone shots. At the time of trial, she limped and continued to have leg and hip pain. Ms. Gutierrez's physician testified the bursitis in her hip was unlikely to improve over time and could lead to arthritis.

**Defendant's collision with the parked truck**

On the same night, Shelley Farmer was at her home in Modesto. Her husband's unoccupied white truck was parked on the street in front of their house. Ms. Farmer heard a big crash. She looked outside and saw that a black or dark blue vehicle had just

3

hit her husband's truck with such force that the truck had been pushed forward by two houses, veered right, and ended up on a neighbor's lawn. The truck was totaled.

Ms. Farmer testified the vehicle that hit the truck was a "really nice car" with "nice rims," and it was "in pieces" because of the collision.

Ms. Farmer told her family to call 911 and ran out to the car that caused the collision. The driver was the only occupant, and he was sitting in the car. He had dark hair.

Ms. Farmer asked the driver if he was okay. The driver, later identified as defendant, was "really, really confused. He said he was being chased and that's why he was going so fast. They wanted his rims. I did ask if he was drinking because I could smell it. He said he did have a couple of drinks, and I asked if he had car insurance, and he said yes."

Tim McDonald, another neighbor, approached the car and talked to defendant, who was still in the driver's seat. He seemed calm but was searching around the interior for his belongings. McDonald asked if he was okay. Defendant said he was alright, but also said he was being chased by someone in a green car. McDonald asked if the neighborhood residents were safe from whoever was chasing him, and defendant said it was okay.

**Arrest of defendant**

At 10:45 p.m., Modesto Police Officer David Wallace received a dispatch to respond to Ms. Farmer's house about a collision. Ms. Farmer's house was in the La Loma residential area, and between a quarter to a half-mile from the intersection of Burney and G Street, where Ms. Gutierrez's vehicle had been hit. Wallace had heard on the radio about another collision nearby.

Ms. Farmer's house was also about a mile from a large music event known as "X Fest 2015" that was happening in downtown Modesto that night. The annual event required extra police presence and roving DUI patrols because of the high number of drunk drivers leaving the event.

Officer Wallace arrived at Ms. Farmer's house and found defendant sitting in the driver's seat of a 2007 black Chrysler 300. Wallace testified defendant seemed impaired. His eyes were bloodshot and watery, the odor of alcohol was on his breath, and his speech was slurred. Defendant was argumentative and staggering.

Ceres Police Officer Keith Kitcher was on patrol as part of that night's extra DUI enforcement and received a dispatch at 10:50 p.m. to respond to Ms. Farmer's house. When he spoke to defendant, he immediately noticed defendant's eyes were red and watery, detected the relatively strong odor of an alcoholic beverage on his breath, and believed he was impaired.

Officer Kitcher conducted two field sobriety tests and defendant's reactions were consistent with being under the influence.

Defendant was arrested. Defendant submitted two breath tests at the scene. The first test was given at 11:20 p.m. and the second was given about five minutes later. Both tests showed that defendant had a 0.35 percent blood-alcohol level. Officer Kitcher testified it would not have been safe for a person to drive at that level.

A criminalist testified a person with a 0.35 percent blood-alcohol content at 11:30 p.m. would have reached that level after consuming 16 to 17 standard alcoholic beverages, and he would not have been able to safely drive. The same person's blood-alcohol level

would have been 0.36 percent at 10:00 p.m. or 10:30 p.m., and he would have been too impaired to drive.

**The Chrysler 300 part found in Ms. Gutierrez's vehicle**

Ms. Gutierrez testified that the day after the collision, she found a piece of the vehicle that hit her in her own vehicle.

Edgar Alcala, who worked for the parts department at Central Valley Chrysler, examined the vehicle piece recovered from Ms. Gutierrez's van. Mr. Alcala was familiar with Chrysler models, and testified the piece was from a Chrysler based on its emblem, and the part number on the piece was consistent with being from either a Chrysler 300 LX or a Charger.

Mr. Alcala looked at photographs of defendant's car, and testified it was a Chrysler 300 LX. The car's rims were not standard and had been purchased and installed "after market." He had never seen a Chrysler that had been outfitted with those types of rims.

People v. Freeman, 2020 Cal. App. Unpub. LEXIS 6501, at *4-11.

## III.    DISCUSSION

### A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B.    Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

1    by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an

2    unreasonable determination of the facts in light of the evidence presented in the State court

3    proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529

4    U.S. at 412-413.

5           A state court decision is "contrary to" clearly established federal law "if it applies a rule that

6    contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts

7    that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."

8    Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

9           In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an

10   "unreasonable application" of federal law is an objective test that turns on "whether it is possible that

11   fairminded jurists could disagree" that the state court decision meets the standards set forth in the

12   AEDPA.  The Supreme Court has "said time and again that 'an unreasonable application of federal

13   law is different from an incorrect application of federal law.'"  Cullen v. Pinholster, 563 U.S. 170, 203

14   (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that

15   the state court's ruling on the claim being presented in federal court was so lacking in justification that

16   there was an error well understood and comprehended in existing law beyond any possibility of

17   fairminded disagreement."  Harrington, 562 U.S. at 103.

18          The second prong pertains to state court decisions based on factual findings.  Davis v.

19   Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)).

20   Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the

21   petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts

22   in light of the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. 510, 520

23   (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997).  A state court's factual finding is

24   unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists."

25   Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied,

26   Maddox v. Taylor, 543 U.S. 1038 (2004).

27          To determine whether habeas relief is available under § 2254(d), the federal court looks to the

28   last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker,

501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C.      Review of Petition

Petitioner raises the following claims for relief in the instant petition: (1) The trial court incorrectly instructed the jury on the lesser included offenses; and (2) That the state court erred in its application of state sentencing law.

1.      Instructional Error

Petitioner argues that his convictions of driving under the influence of alcohol should be reversed because the trial court failed to instruct the jury that its verdict on any lesser included offenses must be based upon the same facts as the greater offenses. Petitioner raised this claim on direct review in the state courts. In the last reasoned decision, the appellate court denied the claim as follows:

**I. Defendant was Properly Convicted of the Lesser Included Offenses**

Defendant contends his convictions on the lesser included offenses for counts 1 and 2 must be reversed because he never received notice of the facts upon which these convictions were based in violation of his due process rights. Defendant's argument is based on the following premise.

Based on the collision with Ms. Gutierrez's vehicle, defendant was charged with count 1, felony driving under the influence causing injury (§ 23153, subd. (a)); count 2, felony driving with a blood-alcohol level of 0.08 percent or more causing injury (§ 23153, subd. (b)); and count 3, felony hit-and-run resulting in injury; he was not charged with any offenses for hitting the parked truck. At trial, defendant did not testify, but defense counsel contested his identity as the person who drove the vehicle that collided with Ms. Gutierrez at the traffic light. Counsel conceded Ms. Gutierrez suffered injury as a result of that incident. Counsel also conceded defendant was driving the car that hit the unoccupied parked truck and he was intoxicated. The jury found defendant not guilty of all three charged felonies. As to counts 1 and 2, however, the jury found him guilty of the lesser included offenses that it had been instructed with: misdemeanor simple driving

under the influence (§ 23152, subd. (a)), and misdemeanor driving with a blood-alcohol level of 0.08 percent or more (§ 23152, subd. (b)).

Defendant further asserts that since he conceded all the elements of the charged DUI felonies for colliding with Ms. Gutierrez, except his identity as the driver, the jury found him not guilty of the three charged felonies because it decided he was not the driver, and it never should have considered the lesser included offenses.

Defendant further asserts the only way the jury convicted him of the lesser included misdemeanor DUI offenses for counts 1 and 2 was because it improperly relied on the prosecution's evidence that he crashed into the unoccupied parked truck while intoxicated. Defendant argues the jury's likely reliance on the parked truck collision was consistent with finding him guilty of the lesser included misdemeanor offenses of DUI without finding anyone was injured: "The only explanation for the verdicts is that they were based on the second accident with the parked [truck]. That conduct was not part of the facts of the 'Gutierrez' accident and, thus, could not legally form the basis for convictions of the lesser included offenses. The jury was not instructed that they could not base their verdict on the 'parked-car' accident." Defendant further asserts: "As far as the jury knew, either accident was available for its consideration and could constitute the factual basis for conviction on the lesser offenses."

As we will explain, the entirety of the record refutes defendant's assumptions and speculation about the jury's verdicts on the lesser included offenses.

### A. Lesser Included Offenses

"[A]n offense expressly alleged in an accusatory pleading may necessarily include one or more lesser offenses." (*People v. Birks* (1998) 19 Cal.4th 108, 117, 77 Cal. Rptr. 2d 848, 960 P.2d 1073.) "A defendant may be convicted of an uncharged crime if, but only if, the uncharged crime is necessarily included in the charged crime. [Citations.] The reason for this rule is settled. '"This reasoning rests upon a constitutional basis: 'Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' [Citation.]"' [Citation.] The required notice is provided as to any charged offense and any lesser offense that is necessarily committed when the charged offense is committed. [Citation.]" (*People v. Reed* (2006) 38 Cal.4th 1224, 1227, 45 Cal. Rptr. 3d 353, 137 P.3d 184.)

The trial court has a sua sponte duty to instruct on lesser included offenses when the evidence raises a question whether all of the elements of the charged offense were present. (*People v. Breverman* (1998) 19 Cal.4th 142, 154, 162, 77 Cal. Rptr. 2d 870, 960 P.2d 1094; *People v. Eid* (2014) 59 Cal.4th 650, 656, 174 Cal. Rptr. 3d 82, 328 P.3d 69.) "[A] lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]" (*People v. Birks, supra*, 19 Cal.4th at pp. 117-118, fn. omitted.)

As relevant to this case, subdivision (a) in both section 23152 and section 23153 prohibit individuals from driving while under the influence. Similarly, subdivision (b) in both section 23152 and section 23153 prohibit individuals from driving with a blood-alcohol level of 0.08 percent or more. In addition to these elements, a conviction for violating either subdivision of section 23153 requires the prosecution to prove the defendant "concurrently [did] any act forbidden by law, or neglect[ed] any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver." (§ 23153, subds. (a), (b).) These additional elements are

not required to prove a violation of either subdivision of section 23152. (§ 23152, subds. (a), (b).)

Based on the statutory elements, simple driving under the influence in violation of section 23152, subdivision (a), is a lesser included offense of driving under the influence causing injury in violation of section 23153, subdivision (a). The same is true for section 23152, subdivision (b) and section 23153, subdivision (b). (See, e.g., *People v. Capetillo* (1990) 220 Cal.App.3d 211, 220-221, 269 Cal. Rptr. 250; *People v. Subramani* (1985) 173 Cal.App.3d 1106, 1111, 219 Cal. Rptr. 644.)

### B. Instructions

In this case, the jury was instructed that the prosecution had the burden of proving the elements of the charged offenses beyond a reasonable doubt. As to count 1, the jury received CALCRIM No. 2100 on the elements of driving under the influence causing injury to another person in violation of section 23153, subdivision (a): (1) the defendant drove a vehicle; (2) he was driving under the influence of an alcoholic beverage; (3) while driving under the influence he also committed an illegal act, alleged as driving at a speed endangering the safety of persons or property (§ 22350); and (4) defendant's illegal act caused bodily injury to another person.

The jury was also instructed on the elements for one lesser included offense for count 1: "Driving under the influence of an alcoholic beverage in violation of ... § 23152(a) is a lesser crime of causing injury to another person while driving a vehicle under the influence of an alcoholic beverage in violation of ... § 23153(a), the charge in Count I." The elements were (1) the defendant drove a vehicle; and (2) when he drove, he was under the influence of an alcoholic beverage. In contrast to the greater offense, the elements did not include the commission of an illegal act or causing bodily injury to another person.

As to count 2, the jury was instructed with CALCRIM No. 2101 on the elements of the charged offense of driving with a 0.08 percent blood-alcohol level causing injury in violation of section 23153, subdivision (b): (1) defendant drove a vehicle; (2) his blood-alcohol level was 0.08 percent or more; (3) he committed an illegal act while driving with that blood-alcohol level, again defined as driving at a speed which endangers persons or property in violation of section 22350; and (4) defendant's illegal act caused bodily injury to another person.

The jury was instructed with CALCRIM No. 2111 about one lesser included offense for count 2: "Driving with a blood alcohol level of 0.08 percent or more, in violation of ... §23152(b), is a lesser crime of causing injury to another person while driving with a blood alcohol level of 0.08 percent or more, in violation of ... § 23153(b), the charge in Count II." The elements were: (1) the defendant drove a vehicle; and (2) when he was driving, his blood-alcohol level was 0.08 percent or more. Again, in contrast to the greater offense, the elements did not include an illegal act or causing bodily injury to another person.

As to counts 1 and 2, the jury was further instructed the "illegal act" alleged as an element of both charged offenses was that "[a] person must drive at a reasonable speed. Whether a particular speed is reasonable depends on the circumstances, such as traffic, weather, visibility, and road conditions. Drivers must not drive so fast that they create a danger to people or property. [¶] If the People have proved [defendant] was not driving at a reasonable speed at the time of the alleged accident, then the defendant violated ... section 22350."

Finally, the jury was instructed on the elements of the third charged felony

9

offense, count 3, hit and run, where the driver "knew that he had been involved in an accident that injured another person." The jury was not given any lesser included offenses for count 3.

### C. Closing Arguments

In his closing argument, the prosecutor clearly stated that the charged offenses were based on the incident where Ms. Gutierrez's vehicle was hit at the intersection and the responsible driver left the scene. The prosecutor argued it was reasonable to assume defendant was driving the car that hit Ms. Gutierrez because she said it was a dark colored Chrysler 300 with shiny rims, a part from that type of car was later found in her own vehicle, the car left the scene and headed toward the La Loma area, and defendant was found inside the same type of car with shiny rims a few minutes later, after he crashed into the parked truck in front of Ms. Farmer's house in the nearby La Loma area.

The prosecutor reviewed the circumstances of defendant's collision with the parked truck while intoxicated. He argued it was reasonable to conclude that he was driving the same car that hit Ms. Gutierrez's vehicle earlier that night, and he was also intoxicated when he did so. The prosecutor noted that Ms. Gutierrez testified that the driver who hit her left the scene at a high rate of speed. He further noted that defendant was driving very fast when he hit the parked truck based on the force that pushed and totaled the truck. Defendant told the witnesses at the scene that he had been chased by someone who wanted to steal his rims. The prosecutor asserted that defendant was driving fast when he hit the truck because he was afraid since he had just hit Ms. Gutierrez and left the scene.

The prosecutor further argued the two collisions occurred close in time, since Sergeant Chamberlain was dispatched at 10:50 p.m. to Ms. Gutierrez's incident, and Officer Wallace was dispatched to Ms. Farmer's house at 10:45 p.m. "These are minutes apart."

Defense counsel's closing argument also addressed the collision with Ms. Gutierrez as the basis for the charged offenses. The defense theory was that the prosecution failed to prove beyond a reasonable doubt that defendant was driving the car that hit her at the traffic light. Counsel said Ms. Gutierrez "walked away from that accident having some injuries and those injuries have persisted." Counsel conceded defendant was very drunk when he hit the parked truck, but there was no way to know if he was lying when he claimed that someone had been chasing him. Counsel focused on Ms. Gutierrez's inability to specifically describe or identify anyone as the driver of the car that hit her.

Defense counsel also argued no one saw defendant driving a car that night, and raised the possibility that someone else was driving the car that hit the parked truck, and "there was enough time for that person to bail out" and for defendant to slide into the driver's seat. Counsel further argued there was no definite evidence on the time that each collision occurred. As for count 3, hit and run causing injury, counsel argued that even a sober person could not have known that Ms. Gutierrez was injured in any way after the collision.

### D. Verdicts

As explained above, the jury found defendant not guilty of count 1, DUI causing injury, count 2, driving with a blood-alcohol level of 0.08 percent or more causing injury, and count 3, hit and run causing injury.

As to count 1, he was convicted of the lesser offense of simple DUI, and as to count 2, the lesser offense of driving with a blood-alcohol level of 0.08 percent or more.

*E. Analysis*

Defendant argues the jury convicted him of the lesser included misdemeanor offenses solely based on the prosecution's evidence about his intoxicated collision with the unoccupied parked truck, even though he was never charged with any offenses based on that collision, the jury was never instructed that it could not rely on the parked truck collision to convict him of the lesser offenses, and his convictions for the two misdemeanors must be reversed because he never received notice of the allegations that the jury relied on. Defendant asserts there was structural error that requires automatic reversal.

Defendant was properly convicted of the misdemeanor lesser included offenses of counts 1 and 2, and those convictions were based on the traffic light collision with Ms. Gutierrez.

First, defendant never objected to the prosecution's introduction of evidence that he crashed into the unoccupied parked truck and that he was intoxicated at the time, even though defendant was never charged with any offenses based on that incident. The prosecution may introduce evidence of the defendant's uncharged acts that occurred after the charged offense if the evidence is relevant to prove some fact other than the defendant's criminal disposition, such as motive, opportunity, intent, preparation, common design or plan, or identity. (Evid. Code, § 1101, subds. (a) & (b); *People v. Balcom* (1994) 7 Cal.4th 414, 425-426, 27 Cal. Rptr. 2d 666, 867 P.2d 777.) "Evidence of identity is admissible where it is conceded or assumed that the charged offense was committed by someone, in order to prove that the defendant was the perpetrator." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 394, fn. 2, 27 Cal. Rptr. 2d 646, 867 P.2d 757.) The greatest degree of similarity is required to prove identity. (*Id.* at p. 403.) "For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. [Citation.]" (*Ibid.*; *People v. Carter* (2005) 36 Cal.4th 1114, 1148, 32 Cal. Rptr. 3d 759, 117 P.3d 476.)

Defendant's uncharged act of crashing into the unoccupied parked truck while intoxicated was relevant to the disputed fact of whether he was the driver who also collided with Ms. Gutierrez. Both incidents involved a man who was driving a dark-colored Chrysler 300 with shiny rims, they occurred within a short period of time, and the scenes were a quarter to a half-mile of each other. The driver who hit Ms. Gutierrez left the scene and headed at a fast speed toward the La Loma area. Defendant was driving at a fast speed when he crashed into the truck parked in front of a house in the La Loma residential area. The evidence about the parked truck was properly admitted. (*People v. Linkenauger* (1995) 32 Cal.App.4th 1603, 1613-1614, 38 Cal. Rptr. 2d 868.)

Next, the jury was clearly advised that counts 1, 2, and 3 were based on the traffic light collision with Ms. Gutierrez. Both the prosecutor and defense counsel addressed the elements of the charged offenses in their closing arguments, and their arguments focused on whether defendant was driving the car that hit Ms. Gutierrez at the intersection. Neither party discussed the collision with the parked truck as the basis for the charged offenses.

Third, the jury was instructed that the misdemeanor offenses were lesser included offenses of the charged offenses of counts 1 and 2 - the traffic light collision with Ms. Gutierrez; the jury was not instructed on any lesser included offenses for count 3.

Fourth, the jury's verdicts that found defendant not guilty on the three charged felony offenses did not mean that it found defendant was not driving the car that hit Ms. Gutierrez at the traffic light. In addition, the not guilty verdicts do not raise the inference

the jury relied on the collision with the parked truck to convict him of the lesser included offenses for counts 1 and 2. As to all counts, the jury was instructed that the prosecution had the burden to prove the charged felony offenses beyond a reasonable doubt. As to counts 1 and 2, the elements were that defendant was driving under the influence or with a blood-alcohol level of .08 percent or more, plus that he "concurrently [did] any act forbidden by law, or neglect[ed] any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver" and that illegal act was not driving at a reasonable speed. (§ 23153, subds. (a), (b); § 22350.) As to count 3, felony hit and run, the prosecution had the burden to prove the additional element that defendant left the scene knowing that the collision resulted in injury. (§ 20001, subd. (a).)

Defendant asserts that since he conceded in closing argument that Ms. Gutierrez was injured during the traffic light collision, the jury's not guilty verdicts for the three felony offenses necessarily meant that it found defendant was not the driver of the car that hit Ms. Gutierrez and it relied on the truck collision instead. To the contrary, while defense counsel said in closing argument that Ms. Gutierrez realized a few days later that she was injured in the collision at the traffic light, defendant never entered into a stipulation to remove that element from the jury's consideration of the three charged felony offenses. The prosecution still had the burden to prove every element of the charged offenses beyond a reasonable doubt, including whether Ms. Gutierrez was injured; if the driver who hit Ms. Gutierrez performed the illegal act of not driving at a reasonable speed within the meaning of section 22350 for counts 1 and 2; and for count 3, that the driver of the responsible vehicle knew the other party was injured.

The jury's verdicts that defendant was not guilty of the three felonies was based on its failure to reach a unanimous verdict that the prosecution met their burden of proof on all the elements of the charged offenses. The jury may have decided that the People's evidence about Ms. Gutierrez's bruises and bursitis was insufficient to prove that element for counts 1 and 2. As to count 3, there is no question that defendant hit Ms. Gutierrez's vehicle and immediately drove away, but the jury likely found he was not guilty of that offense because the prosecution failed to prove the required element that he left the scene knowing that the collision resulted in injury to Ms. Gutierrez; there was no lesser included offense alleged as to count 3.

In addition, the prosecution never introduced any evidence about how fast defendant was driving when he hit Ms. Gutierrez, which was another critical element of counts 1 and 2. Ms. Gutierrez testified her vehicle was hit moments after the traffic light turned green, and the car in front of her had already proceeded into the intersection. In contrast to the major damage to the parked truck that was consistent with being hit at a high rate of speed, Officer Chamberlain testified that Ms. Gutierrez's vehicle had minor damage from the rear-end collision. The jury may have found defendant was the driver who hit Ms. Gutierrez, but it also may have concluded the prosecution failed to prove the element that defendant was not driving at a reasonable speed when the collision occurred.

Defendant further argues the evidence is insufficient to support his convictions because of discrepancies between when officers responded to the traffic light collision with Ms. Gutierrez, compared to when police were dispatched after defendant crashed into the parked truck in front of Ms. Farmer's house. Defendant argues the timeline refutes the prosecution's theory that defendant hit Ms. Gutierrez's vehicle and then crashed into the parked truck, and suggests the evidence instead shows the two incidents were unrelated, and Ms. Gutierrez's vehicle was hit after the crash in front of Ms. Farmer's house.

The record refutes these arguments. Ms. Gutierrez testified that after her vehicle was hit from behind, the car that had been in front of her "came around" to make sure she was

okay. Ms. Gutierrez then turned right to the cross street and parked at the curb, apparently expecting the suspect vehicle to stop and contact her. Instead, the suspect vehicle drove past the driver's side of her vehicle, the driver tried to conceal his face, and then the suspect vehicle accelerated away and headed toward the La Loma area. Ms. Gutierrez testified she repeatedly honked the horn on her vehicle to get the driver's attention, but the suspect vehicle swerved away. Ms. Gutierrez further testified she got out and looked around her vehicle to see the damage. At 10:50 p.m., Officer Chamberlain received the dispatch to respond to the intersection and arrived at 11:09 p.m. and met Ms. Gutierrez. Based on Ms. Gutierrez's description of the incident, there was obviously some delay between the actual collision at the traffic light and when she realized she had to call law enforcement after the suspect vehicle left the scene.

Ms. Farmer's house was a quarter-to a half-mile from the intersection where Ms. Gutierrez had been hit. While Ms. Farmer believed the collision into the parked truck in front of her house occurred around 10:00 p.m., she also testified that she ran outside within seconds of hearing the sounds of the collision and immediately told her family to call 911. At 10:45 p.m., Officer Wallace received the dispatch to respond to Ms. Farmer's house about the collision into the parked truck; Wallace testified he had heard on his radio about another collision nearby. Officer Kitcher received the dispatch about the truck collision at 10:50 p.m.

The entirety of the evidence presents strong circumstantial evidence that there was some delay between the suspect vehicle hitting Ms. Gutierrez's vehicle at the stoplight, and when she was able to call law enforcement. In contrast, Ms. Farmer directed her family to call 911 within seconds of hearing the collision in front of her house. The record does not undermine the prosecution's theory that defendant hit Ms. Gutierrez's vehicle and then crashed into the parked truck in front of Ms. Farmer's house.

We thus conclude it is not reasonably likely the jury convicted defendant of the two lesser included offenses based on defendant's collision with the parked truck. The jury was properly instructed that the prosecution had the burden of proving every element of the charged offenses beyond a reasonable doubt. The jury was well aware that defendant was being tried for criminal offenses for hitting Ms. Gutierrez's vehicle and driving away from the scene; the prosecutor's closing argument further advised the jury that the prosecution relied on defendant's uncharged misconduct of crashing into the parked truck to prove that defendant was driving the same vehicle when it crashed into Ms. Gutierrez earlier that night and not as the basis of any of the charged offenses; and the instructions advised the jury to consider the misdemeanor offenses as lesser included offenses of the crimes charged in counts 1 and 2. In the absence of any evidence of confusion on the part of the jury, we presume the jurors followed the court's instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852, 111 Cal. Rptr. 2d 129, 29 P.3d 209.)

People v. Freeman, 2020 Cal. App. Unpub. LEXIS 6501, at *18-36.

The Fifth DCA reasonably found that Petitioner was properly convicted of the misdemeanor

lesser included offenses of counts 1 and 2, and those convictions were based on the traffic light

collision with Ms. Gutierrez. People v. Freeman, 2020 Cal. App. Unpub. LEXIS 6501, at *28. The

Fifth DCA first discussed that the defendant never objected to the prosecution's introduction of

evidence that he crashed into the unoccupied parked truck and that he was intoxicated at the time, even

though defendant was never charged with any offenses based on that incident. Id. The Fifth DCA

found that the defendant's uncharged act of crashing into the unoccupied parked truck while intoxicated was relevant to the disputed fact of whether he was the driver who also collided with Ms. Gutierrez. Id. at 29. Both incidents involved a man who was driving a dark-colored Chrysler 300 with shiny rims, they occurred within a short period of time, and the scenes were a quarter to a half-mile of each other. Id. The driver who hit Ms. Gutierrez left the scene and headed at a fast speed toward the La Loma area. Id. Defendant was driving at a fast speed when he crashed into the truck parked in front of a house in the La Loma residential area. Id. Accordingly, the Fifth DCA reasonably concluded that the evidence about the parked truck was properly admitted. Id. at *30.

Petitioner argues that no reasonable juror could have concluded that Ms. Gutierrez was not injured in the collision. (Doc. 12 at 20-21.) However, as pointed out by the Fifth DCA, the defendant never stipulated to remove that element from the jury's consideration of the three charged felony offenses, and the prosecution still had the burden to prove every element of the charged offenses beyond a reasonable doubt, including whether Ms. Gutierrez was injured. People v. Freeman, 2020 Cal. App. Unpub. LEXIS 6501, at *31-32. As discussed by the Fifth DCA, the jury's verdicts that defendant was not guilty of the three felonies was based on its failure to reach a unanimous verdict that the prosecution met the burden of proof on all the elements of the charged offenses; the jury may have decided that the prosecution's evidence about Ms. Gutierrez's bruises and bursitis was insufficient to prove that element for counts 1 and 2. Id. at *32.

Petitioner also contends that no reasonable juror could have concluded that the person who struck Ms. Gutierrez did not violate the basic speed law. (Doc. 12 at 21-22.) The prosecution never introduced any evidence about how fast defendant was driving when he hit Ms. Gutierrez, which was another critical element of counts 1 and 2. People v. Freeman, 2020 Cal. App. Unpub. LEXIS 6501, at *33. Ms. Gutierrez testified her vehicle was hit moments after the traffic light turned green, and the car in front of her had already proceeded into the intersection. Id. In contrast to the major damage to the parked truck that was consistent with being hit at a high rate of speed, Officer Chamberlain testified that Ms. Gutierrez's vehicle had minor damage from the rear-end collision. Id. Accordingly, the Fifth DCA held that the jury may have found defendant was the driver who hit Ms. Gutierrez, but it also may have concluded the prosecution failed to prove the element that defendant was not driving at a

14

1  reasonable speed when the collision occurred. Id. Considering this analysis, the state court's

2  determination of the facts in light of the evidence presented in the State court proceeding was not

3  unreasonable.

4         Petitioner alleges that People v. Ellis (1999) 69 Cal.App.4th 1334, 82 Cal. Rptr. 2d 409, is on

5  point and asserts that it held the basic speed law is violated when a vehicle rear-ends another car at a

6  stoplight. (Doc. 12 at 22.) In Ellis, a drunk driver hit another car at a stoplight with such force that the

7  second car was pushed through the intersection. Id. at 1336. The defendant in that case was convicted

8  of driving under the influence causing injury (Veh. Code, § 23153, subds. (a), (b)), which required

9  proof that the driver violated the basic speed law by speeding (§ 22350). However, the court did not

10  instruct the jury with the legal definition of speeding. Id. at 1338. In contrast to Ellis, the jury in this

11  case was instructed with CALCRIM No. 704 on the definition of speeding under the basic speed law

12  as an element of felony charges in counts 1 and 2. People v. Freeman, No. F077543, 2020 Cal. App.

13  Unpub. LEXIS 7324, at *3 (Nov. 3, 2020). Ellis does not support the assertion raised by defendant —

14  that a driver who rear-ends another vehicle conclusively violates the basic speed law.

15         Petitioner next contends that the instructions and the prosecutor's arguments did not advise the

16  jury that its verdict on the lesser included offenses must be based upon the Gutierrez accident. (Doc.

17  12 at 22-25.) To the extent that Petitioner is raising an instructional error claim, Petitioner fails to

18  present a federal claim, becuase Petitioner is challenging the application and interpretation of state

19  law. It is well-settled that federal habeas relief is not available to state prisoners challenging state law.

20  Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus

21  relief does not lie for errors of state law"); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997)

22  ("alleged errors in the application of state law are not cognizable in federal habeas corpus"

23  proceedings). Petitioner's instructional error challenge does not give rise to a federal question

24  cognizable on federal habeas review. Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have

25  repeatedly held that a state court's interpretation of state law, including one announced on direct

26  appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). Thus, the claim is

27  not cognizable on federal habeas and should be rejected.

28         Even if the Court found the claim cognizable, it would be without merit. A habeas petitioner is

not entitled to relief unless the instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but they are not entitled to habeas relief unless the error resulted in "actual prejudice." Id. (citation omitted); see Calderon v. Coleman, 525 U.S. 141, 146-47 (1998). The Fifth DCA discussed that the jury was clearly advised that counts 1, 2, and 3 were based on the traffic light collision with Ms. Gutierrez. People v. Freeman, 2020 Cal. App. Unpub. LEXIS 6501, at *30. Both the prosecutor and defense counsel addressed the elements of the charged offenses in their closing arguments, and their arguments focused on whether defendant was driving the car that hit Ms. Gutierrez at the intersection. Id. Neither party discussed the collision with the parked truck as the basis for the charged offenses. Id. Additionally, the Fifth DCA discussed that the jury was instructed that the misdemeanor offenses were lesser included offenses of the charged offenses of counts 1 and 2 - the traffic light collision with Ms. Gutierrez; the jury was not instructed on any lesser included offenses for count 3. Id. Petitioner fails to demonstrate that the alleged error resulted in actual prejudice. Accordingly, Petitioner is not entitled to federal habeas relief. Moreover, Petitioner fails to establish that the state court's determination was contrary to or an unreasonable application of Supreme Court authority. The claim should be denied.

2.  Sentencing Claim

Petitioner argues that the modification of the finding on the prior conviction to include the fact that it was a felony for purposes of sentencing violated Petitioner's right to due process of law. Petitioner raised this claim on direct review in the state courts. In the last reasoned decision, the Fifth DCA denied the claim as follows:

**II. The Court's Findings on the Prior Conviction Allegations**

Defendant asserts the court improperly treated his two misdemeanor convictions for the lesser included offenses in the traffic light collision case as felonies for purposes of sentencing. Defendant concedes that the court could impose felony sentences for the offenses based on section 23550.5 if he had a qualifying prior felony conviction. Defendant argues the court failed to find his prior conviction in 2012 was a felony offense to permit sentencing under section 23550.5.

***A. Prior DUI Convictions and Section 23550.5***

Section 23152 prohibits driving under the influence of alcohol or driving with a blood-

alcohol level of 0.08 percent or more. (§ 23152, subds. (a), (b).) A first-time violation of section 23152 is normally a misdemeanor. (§ 23536; *People v. Baez* (2008) 167 Cal.App.4th 197, 199, 83 Cal. Rptr. 3d 895; *People v. Doyle* (2013) 220 Cal.App.4th 1251, 1257, 164 Cal. Rptr. 3d 86.)

Section 23153 prohibits driving under the influence of alcohol or driving with a blood-alcohol level of 0.08 percent or more, when the person performs an illegal act that causes injury. (§ 23153, subds. (a), (b).) A first-time violation of section 23153 is a "wobbler" offense, punishable as either a felony or a misdemeanor. (§ 23554.)

Section 23550.5 provides for more severe penalties for recidivist DUI offenders. (*People v. Guillen* (2013) 212 Cal.App.4th 992, 995, 151 Cal. Rptr. 3d 514.) As relevant to this case, section 23550.5, subdivision (a) states:

"(a) A person is guilty of a public offense, punishable by imprisonment in the state prison or confinement in a county jail for not more than one year and by a fine of not less than three hundred ninety dollars ($390) nor more than one thousand dollars ($1,000) *if that person is convicted of a violation of Section 23152 or 23153, and the offense occurred within 10 years of any of the following*:

"(1) A separate violation of Section 23152 that was punished as a felony under Section 23550 or this section, or both, or under former Section 23175 or former Section 23175.5, or both.

"(2) *A separate violation of Section 23153 that was punished as a felony*.

"(3) A separate violation of paragraph (1) of subdivision (c) of Section 192 of the Penal Code that was punished as a felony." (Italics added.)

Section 23550.5 thus permits a current violation of section 23152 (normally a misdemeanor) or section 23153 (a misdemeanor or a felony) to be treated as a felony if the defendant has been convicted within the last 10 years of a specified prior DUI conviction that was punished as a felony, including a violation of section 23153. (§ 23550.5, subd. (a)(1)-(a)(3); *People v. Baez, supra*, 167 Cal.App.4th at pp. 199-200.)

### B. The Allegations

As set forth above, defendant was charged in case No. 1431988 with count 1, felony DUI causing injury on January 14, 2011 in violation of section 23153, subdivision (a), based on the incident when he lost control of his vehicle, and his fiancée was ejected and injured. He pleaded no contest to that felony offense in 2012. The court placed him on felony probation for five years.

In the current case, the information alleged counts 1 and 2, felony violations of section 23153, subdivisions (a) and (b). As to those two counts, it was further alleged that within the preceding 10 years, "defendant committed a violation of ... Section 23153(a) on or about the 14th day of January, 2011, and was duly convicted in the Superior Court, County of Stanislaus, State of California. (Docket #1431988)."

As to all the felony charges, it was further alleged defendant was "convicted of a serious felony" within the meaning of the three strikes law (Pen. Code, § 667, subd. (d)), based on the same prior DUI conviction in case No. 1431988 in 2012.

Prior to defendant's jury trial, the court granted his motion to bifurcate the two special allegations based on his 2012 prior DUI conviction.

17

### C. The Court's Trial on the Prior Conviction Allegations

On March 8, 2018, while the jury was deliberating on the charged offenses, defendant waived his right to a jury trial on the prior conviction allegations and the court conducted a bench trial. The prosecutor introduced documentary evidence to prove defendant suffered the prior DUI conviction in 2012 that was the basis for both the prior DUI allegation and the prior strike conviction. The court granted the prosecutor's request to take judicial notice of the superior court file for case No. 1431988, that consisted of certified copies of the complaint, the minute orders for the plea and sentencing in 2012, the terms and conditions of probation, and documents to prove defendant's identity. Defense counsel did not object to the evidence.

After admitting the exhibits, the court took the prior conviction evidence under submission pending the jury's verdicts.

As set forth in the factual statement above, the documentary exhibits show that on May 18, 2012, defendant pleaded no contest in case No. 1431988 to count 1, felony driving under the influence of alcohol causing injury on January 14, 2011 (§ 23153, subd. (a)) and admitted the special allegations that his blood-alcohol level was 0.15 percent or higher (§ 23578) and the victim suffered great bodily injury (Pen. Code, § 12022.7, subd. (a)), as alleged in the felony complaint, and the court placed him on felony probation for five years.

### D. The Court's Findings

Later on March 8, 2018, the jury found defendant not guilty of the charged felony offenses in counts 1, 2 and 3, and convicted him of the lesser included misdemeanor DUI offenses for counts 1 and 2.

After the court received the verdicts and excused the jury, it stated that it still had to decide "with regard to the prior as it relates to the findings of guilt with regard to the misdemeanors," and it had received "a number of exhibits which were previously identified and received." The court asked the parties if they had anything to add. Defense counsel reminded the court there could be errors in the paperwork and the prosecution had the burden to prove the prior conviction beyond a reasonable doubt.

The court stated:

"It appears to me beyond a reasonable doubt that the defendant's prior for a separate violation [on] January 14, 2011, arising out of a violation on § 23153(a), Stanislaus County Docket Number 1431988, has been proven to the satisfaction of the Court. [The] Court finds it is a valid and constitutional conviction of a prior violation."

The prosecutor asked the court about its findings, and the following exchange occurred:

"[THE PROSECUTOR]: [W]e, in the course of this trial, we've sanitized the trial for the purposes of any mention of a prior. So we were talking about [section] 23153(a) or (b). But, again, given this was a [section] 23152(a) and (b) within ten years of the previous.

"THE COURT: I found that that is a valid constitutional prior.

"[THE PROSECUTOR]: I have nothing further then.

"THE COURT: *It applies to what he was found guilty of.*" (Italics added.)

18

### E. The Sentencing Briefs

At a subsequent hearing, the court asked the parties for briefing on whether it could treat his two misdemeanor convictions as felony offenses pursuant to section 23550.5, based on the existence of the prior felony DUI conviction in 2012 that it found true for the two special allegations.

Defendant argued that his convictions for the lesser included offenses could still be treated as wobbler offenses, even though the court found the prior DUI conviction true. Defendant further argued that once the jury found him guilty of the lesser included misdemeanor offenses, and the court recorded the verdicts, "double jeopardy prevents conviction on the greater offense. Here, a misdemeanor verdict was returned and recorded, and [defendant] may no longer be sentenced to a felony." Defendant argued a conviction of a lesser included misdemeanor offense barred a subsequent "conviction" of a "great offense" under double jeopardy principles.

"To the extent that felony Driving under the Influence could have been offered to the jury in this case and was not, the state double jeopardy cause prevents conviction on a greater offense once the verdict has been recorded. Generally, a jury must acquit the defendant of a greater offense before proceeding on to a verdict on a lesser included offense. A jury which attempts to return a verdict on a lesser without disposing of the greater offense may be admonished by [the] court, and if they persist, the prosecution may move for a mistrial. [Citation.] However, if the jury is allowed to return the verdict of guilty on a lesser included offense, and the verdict is accepted and recorded, then the defendant stands convicted of the lesser only. [Citation.]"

The People replied that the information alleged defendant had a prior DUI conviction within the prior 10 years that would elevate the charged offenses to felonies. While section 23152 was a misdemeanor, the court's finding that he had the prior felony DUI conviction in 2012 elevated the offenses to felonies. The People further argued that while the verdict forms stated the lesser included offenses were misdemeanors, the jury's verdicts were not dispositive for sentencing purposes and did not prevent the court from imposing felony sentences.

### F. The Sentencing Hearing

On May 15, 2018, the court held the sentencing hearing for the three cases.

The court began with the "threshold issue" of whether it could treat defendant's misdemeanor convictions for violating section 23152, subdivisions (a) and (b) as felonies after it had "recorded" the convictions, because it found that he suffered a prior conviction for driving under the influence causing injury within the prior 10 years.

The court held defendant "may be sentenced to either a misdemeanor or felony as the offense is a wobbler." The court rejected the defense argument that treating the misdemeanors as felonies for sentencing purposes violated double jeopardy provisions. "It is the Court's belief that the fact that the misdemeanor convictions were recorded, simply means that he was convicted of a misdemeanor, which becomes elevated to a potential felony after the Court found his priors to be true."

"In our case, [defendant] was found not guilty of the felonies and was found guilty of the misdemeanors, which then by operation of law, because of his priors which were found true, gives the Court the discretion to impose a felon or a misdemeanor. And in this case the Court will be imposing a felony."

Thereafter, the court imposed felony sentences for the misdemeanor lesser included

19

offenses.

### G. Analysis

Defendant renews the argument he raised at the sentencing hearing and asserts the decision to treat his misdemeanor convictions as felonies violated the constitutional prohibition against double jeopardy since the jury found him guilty of misdemeanor offenses.

Defendant's arguments are refuted by the court. As to counts 1 and 2, the information pleaded, and the prosecution proved, that defendant had a prior conviction for violating section 23153, subdivision (a) in 2012. While the jury found defendant guilty of misdemeanor DUI offenses in violation of section 23152, subdivisions (a) and (b), the court was statutorily authorized by section 23550.5 to treat those misdemeanor convictions as felonies for purposes of sentencing.

As noted by the trial court, the designation of the lesser included offenses as misdemeanors on the verdict forms was not dispositive, and the court's receipt and recording of the jury's verdict did not implicate double jeopardy. Section 23550.5 is a penalty provision and a "'sentence-enhancing statute and not a substantive offense statute.' [Citations.]" (*Dietrick v. Superior Court* (2013) 220 Cal.App.4th 1472, 1476, 163 Cal. Rptr. 3d 789.)

Defendant acknowledges that section 23350.5 permits the court to impose felony sentences for his misdemeanor convictions if it found he had a prior felony conviction for driving under the influence causing injury within the previous 10 years. Defendant further acknowledges that the court found he was convicted of such an offense in 2012. However, defendant asserts the court never found his prior conviction in 2012 was a "felony" offense that would have allowed it to impose felony sentences for his misdemeanor convictions under section 23350.5.

The record again refutes defendant's arguments. The information alleged that defendant's prior conviction in case No. 1431988 in 2012 was a DUI offense that occurred within 10 years of the current offenses, and also a serious felony within the meaning of the "Three Strikes" law. Defendant moved to bifurcate the prior conviction allegations from the jury trial. Defendant then waived a jury trial on the prior conviction allegations and the court conducted a bench trial. The prosecution introduced documentary evidence from case No. 1431988 that showed defendant had been charged with a felony violation of section 23153, subdivision (a), he pleaded guilty to that felony charge in 2012, and the court placed him on felony probation. Defendant did not object to the prosecution's evidence.

After the jury returned the verdicts on the lesser included offenses, the court returned to the prior conviction allegations and found that defendant had suffered the prior conviction alleged in the information. While the court did not state that the prior DUI conviction from 2012 was a felony offense, it found true the allegations in the information that he suffered that conviction in case No. 1431988, and it is undisputed that the evidence showed that conviction was a felony. The court properly imposed felony sentences in this case.

People v. Freeman, 2020 Cal. App. Unpub. LEXIS 6501, at *36-47.

As to counts 1 and 2, the information pleaded, and the prosecution proved, that defendant had a prior conviction for violating section 23153, subdivision (a) in 2012. People v. Freeman, 2020 Cal.

App. Unpub. LEXIS 6501, at *45. While the jury found Petitioner guilty of misdemeanor DUI offenses in violation of section 23152, subdivisions (a) and (b), the Fifth DCA found that the court was statutorily authorized by section 23550.5 to treat those misdemeanor convictions as felonies for purposes of sentencing. See id.

As Respondent alleges, Petitioner acknowledges that section 23350.5 permits the court to impose felony sentences for his misdemeanor convictions if it found he had a prior felony conviction for driving under the influence causing injury within the previous 10 years and acknowledges that the court found he was convicted of such an offense in 2012. (Doc. 9 at 8); People v. Freeman, 2020 Cal. App. Unpub. LEXIS 6501, at *45-46. As discussed by the Fifth DCA, the information alleged that Petitioner's prior conviction in case No. 1431988 in 2012 was a DUI offense that occurred within 10 years of the current offenses, and also a serious felony within the meaning of the "Three Strikes" law. People v. Freeman, 2020 Cal. App. Unpub. LEXIS 6501, at *46.

The Fifth DCA further discussed that after the jury returned the verdicts on the lesser included offenses, the court returned to the prior conviction allegations and found that defendant had suffered the prior conviction alleged in the information. People v. Freeman, 2020 Cal. App. Unpub. LEXIS 6501, at *46-47. The Fifth DCA reasonably concluded that while the court did not state that the prior DUI conviction from 2012 was a felony offense, it found true the allegations in the information that he suffered that conviction in case No. 1431988, and it is undisputed that the evidence showed that conviction was a felony. Id. at *47.

Petitioner claims that modification of the verdict at sentencing was unconstitutional. (Doc. 12 at 28.) Petitioner cites to Smalis v. Pennsylvania, 476 U.S. 140, 145 (1986), for the proposition that "subjecting the defendant to postacquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause." (Doc. 12 at 28.) Petitioner then asserts that "[t]his principal applies with equal vigor on due process grounds to any attempt to modify a finding on a prior conviction," (Doc. 12 at 28-29), however, as Respondent alleges, Petitioner fails to provide authority on this contention. (Doc. 9 at 9.) Petitioner also renewed this claim that the Fifth and Fourteenth Amendments prohibit the trial court from sentencing Petitioner's convictions for diving under the influence as felonies, but the Supreme Court denied the petition for review. (See LD 7-14.)

As Respondent claims, to the extent that Petitioner is challenging the application and interpretation of state sentencing law, such challenge does not give rise to a federal question cognizable on federal habeas review. (Doc. 9 at 9); Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus"). Even if the Court found the claim cognizable, it would be without merit as discussed above, as the Fifth DCA reasonably concluded that the court properly imposed felony sentences. Moreover, Petitioner fails to establish that the state court's determination was contrary to or an unreasonable application of Supreme Court authority. The claim should be denied.

## IV.    CERTIFICATE OF APPEALABILITY

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003).   The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

(a)      In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b)      There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner must establish that "reasonable jurists could

22

debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Thus, the Court DECLINES to issue a certificate of appealability.

## V.     ORDER

Accordingly, the Court ORDERS:

1. The petition for writ of habeas corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment and close the case; and

3. The Court DECLINES to issue a certificate of appealability.


IT IS SO ORDERED.

Dated:   **October 14, 2021**           **/s/ Jennifer L. Thurston**
                                        CHIEF UNITED STATES MAGISTRATE JUDGE

23